Cyril Chovan *v.* Wheeling-Pittsburgh Steel Corp. and Commonwealth of Pennsylvania. Wheeling-Pittsburgh Steel Corp., Appellant.

Argued March 4, 1976, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three. Reargued February 1, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Henry J. Wallace, Jr.,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Richard G. Spagnolli,* with him *McArdle, Henderson, Caroselli, Spagnolli & Beachler,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE KRAMER, May 12, 1977:

This is an appeal by Wheeling-Pittsburgh Steel Corporation from an order of the Workmen's Compensation Appeal Board dated September 11, 1975, in which the Board awarded benefits to Cyril Chovan. Wheeling-Pittsburgh raises issues concerning the Board's award of attorney's fees and its award of interest. Because of inadequacies in the record, we reluctantly conclude that we must remand this case to the Board.

On September 28, 1973, prior to filing his claim petitions, Chovan executed an ''Agreement to Reimburse'' pursuant to a labor agreement negotiated between Wheeling-Pittsburgh and Chovan's union. This agreement provided, *inter alia,* to reimburse Wheeling-Pittsburgh or its ''authorized agent'' for any sickness and accident benefits paid to him during any period for which he was not entitled to such benefits because of the subsequent successful assertion of a workmen's compensation or occupational disease claim covering that same period. The agreement also provided that Chovan would instruct any attorney retained by him in connection with such a claim not to seek compensation from Wheeling-Pittsburgh or its agent for legal services performed by the attorney in securing reimbursement of the amount of overpaid benefits. Finally, in the event that Chovan's attorney did require the payment of compensation from Wheeling-Pittsburgh or its agent for services provided in securing a fund for the reimbursement of benefit overpayment,

Chovan agreed to reimburse Wheeling-Pittsburgh or its agent in full for such attorney's fees.

The execution of this agreement was a condition precedent to Chovan's receiving sickness and accident benefits under the insurance benefit provisions of the labor agreement. After signing the agreement, Chovan began receiving $100 per week for the period from September 23, 1973 to September 21, 1974—a total of $5,200. These payments were made by the General American Insurance Company.

On May 9, 1974, Chovan filed claim petitions alleging total disability arising from exposure to a silica hazard and, on January 22, 1975 a referee found that Chovan was, in fact, disabled. On behalf of General American, Wheeling-Pittsburgh asserted a claim of subrogation.[1] The referee awarded Chovan benefits payable by Wheeling-Pittsburgh, and General American was awarded subrogation rights in the amount of $2,143.[2] The referee further awarded in-

---

[1] This claim was asserted on the basis of the "Agreement To Reimburse" and could also be maintained under the second paragraph of Section 319 of The Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §671, which provides:

> Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

[2] This figure represents the sum of payments under the labor agreement sickness and accident benefit program made *after* the "date of disability," determined by the referee to have been April 24, 1974. That date determines when compensation under the Act begins. Section 306(d) of the Act, 77 P.S. §514.

terest of ten percent against Wheeling-Pittsburgh on amounts due and owing, and Chovan's attorney was awarded $1,000 in fees against Chovan and $214.30 in fees against General American.

Both parties appealed to the Board, Chovan joining in his attorney's request that the fee be increased to $2,080 (representing twenty percent of the first year's benefits). Wheeling-Pittsburgh appealed, *inter alia*, the referee's awards of attorney's fees against General American and the award of interest. The Board affirmed the referee's decision in all respects except the amount of attorney's fees. The Board increased the attorney's fees to be paid by General American to $428.60, representing twenty percent of the $2,143 subrogation amount.

In its challenge to the Board's award of attorney's fees against General American, one of Wheeling-Pittsburgh's arguments is that General American is no more than Wheeling-Pittsburgh's "authorized agent for payment and collection." While it does appear from the record and the briefs that General American is *not* Wheeling-Pittsburgh's *workmen's compensation carrier* and that Wheeling-Pittsburgh is self-insured under the Act, nowhere is it revealed with any degree of clarity what function General American plays with regard to the benefit program established by the collective bargaining agreement. We believe that function to be a crucial factor for consideration in arriving at the proper analysis and resolution of the issues before us.

Subrogation is a remedy originally conceived in equity and it is equitable principles which shape the relationship between the right of subrogation and the taxing of a proportionate share of fees and costs to the subrogee. *Workmen's Compensation Appeal Board v. Del Vecchio*, 23 Pa. Commonwealth Ct. 244, 248, 351 A.2d 691, 693 (1976). Those principles re-

quire "the doing of complete, essential and perfect justice between all parties without regard to form." *Furia v. City of Philadelphia,* 180 Pa. Superior Ct. 50, 54, 118 A.2d 236, 238 (1955).

If Wheeling-Pittsburgh actually made all payments to Chovan with General American merely channeling the funds, this Court would be hard pressed to find justification for the imposition of attorney's fees upon what is, in substance, a successful claim of set-off or defalcation by Wheeling-Pittsburgh, even though done in the form of a subrogation claim by a nominal third party, General American. In such a situation Wheeling-Pittsburgh would receive *no benefit from Chovan's litigation* of his claim. The "subrogation" in this context amounts to no more than a roundabout way to prevent Chovan from directly recovering twice from Wheeling-Pittsburgh for a single period of disability. Whether under the Act or the contract benefit program, Wheeling-Pittsburgh has still paid out the $2,143 to Chovan.

If, on the other hand, General American was more than a mere "agent for payment and collection" under the benefit program established by the collective bargaining agreement, the result is quite different. If General American was an actual insurer, which for premiums paid assumed the liability of Wheeling-Pittsburgh under the benefit program, the right of subrogation here would be General American's, both in *form* and *substance.* Because General American is not Wheeling-Pittsburgh's workmen's compensation carrier and thus has no liability to Chovan under the Act, its "subrogation" claim is not in the nature of a set-off or defalcation but is, in fact, a subrogation of General American to *funds that it would have no rights in respect thereof in the absence of Chovan's successful litigation* of his workmen's compensation claim. General American would thus be the recipient

of a true pecuniary benefit from the efforts of Chovan and his counsel. Under those circumstances, we believe the principle enunciated by Judge ROGERS in *Del Vecchio, supra* at 248, 351 A.2d at 693, would be fully applicable:

> The right to subrogation derives from equitable principles. Equity to the claimant in a workmen's compensation case clearly demands that the subrogee of a fund created by a claim pursued by the claimant should be required to contribute proportionately to reasonable fees and costs expended in producing the fund.

It is the receipt of a pecuniary benefit by the subrogee due to the efforts of the subrogor which triggers equity's demand that the subrogee pay for its benefit by sharing proportionately in the costs of producing the fund. Assuming General American was the insurer of the benefit program under the labor contract but was not Wheeling-Pittsburgh's workmen's compensation carrier, then the switch of the basis of liability, as of the date of disability, from the benefit program to the Act and the consequent subrogation to the amount of $2,143 is just such a pecuniary benefit. Under this assumed factual context, we believe the Board's award of attorney's fees would be proper.[3] Our analysis

---

[3] Wheeling-Pittsburgh has argued that such an award would be improper because General American was not a party to this litigation. We disagree. Under our decision in *United States Steel Corp. v. Workmens' Compensation Appeal Board*, 10 Pa. Commonwealth Ct. 67, 308 A.2d 200 (1973) an employer may assert a subrogation claim on the behalf of its insurance carrier. Thus, the carrier is afforded the benefit of having its subrogation claim asserted without the necessity of it becoming a formal party. This is presciesly what occurred in the present case. We cannot, however, permit the subrogee to then shield itself with its non-party status from its equitable duty to contribute its share toward meeting the expenses incurred in creating the fund to which it is subrogated. We conclude that where an insurer permits its subrogation interest to

cannot stop there, however, for there is one more factor for consideration if we are to render complete justice between all parties involved: Chovan's agreement to reimburse Wheeling-Pittsburgh or its agent for fees charged to them by his attorney with respect to the subrogated amount. The signing of the "Agreement to Reimburse" by Chovan was stipulated to by his attorney at the hearing before the referee. Chovan has made no attempt to void or otherwise show this agreement to be a nullity. We note particularly that the effect of this agreement does not run afoul of the prohibitions of Section 407 of the Act[4] for the reason that, had there been no overpayment of sickness and accident benefits and thus no subrogation, Chovan's total workmen's compensation award would have been no different than the award he did get, and all of his attorney's fees would have been payable by him. Thus, Chovan still receives all that he is entitled to under the Act if this provision of the "Agreement to Reimburse" is enforced. In summary, under our second assumed factual context, Chovan's attorney is indeed

---

be represented by the employer, the equitable considerations which lie at the heart of the subrogation remedy require that the employer be deemed to likewise represent the insurer for the limited purpose of a defalcation in the subrogated amount for reasonable fees and costs.

[4] 77 P.S. §731, which provides in part:

On or after the seventh day after any injury shall have occurred, the employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under this act; but *any agreement* made prior to the seventh day after the injury shall have occurred, or permitting a commutation of payments contrary to the provisions of this act, or *varying the amount to be paid* or the period during which compensation shall be payable as provided in this act, *shall be wholly null and void.* It shall be unlawful for any employer to accept a receipt showing the payment of compensation when in fact no such payment has been made. (Emphasis added.)

entitled to have a proportionate share of his fees paid by General American, but Chovan himself is obligated to reimuburse General American for that same amount.

Because the record fails to disclose the nature of General American's relationship to the sickness and accident benefit program under the labor agreement, we simply cannot verify or deny the propriety of the Board's award of attorney's fees on the subrogated amount. Thus, although the net effect is the same, we cannot determine whether it is proper to reverse the Board's awards of attorney's fees against General American or to affirm the award but modify the Board's order by ordering Chovan to reimburse the amount of the fees to General American. Although this may be just a matter of form in the context of the present case, we are loath to sacrifice precision in our order for the sake of expediency. Fortunately we also find a remand necessary on the separate question of the interest award, so our order will also direct the compensation authorities to make the needed finding of fact and to resolve the issue of attorney's fees in accordance with this opinion.

Wheeling-Pittsburgh's second challenge to the Board's order deals with the award of interest. The Board awarded compensation at the rate of $100 per week commencing April 24, 1974, and interest on "the amount due and owing to the claimant by defendant only." Section 406.1 of the Act, 77 P.S. §717.1 states in part:

Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum. *Any payment of compensation prior* or subsequent *to an agreement or notice of compensation payable* or greater in amount than provided therein *shall, to the extent of the amount of such payment or payments, discharge*

*the liability of the employer with respect to such case.* (Emphasis added.)

Wheeling-Pittsburgh argues that under this provision its payments made pursuant to the "Agreement to Reimburse" constitute payments in lieu of compensation and that Chovan will receive a windfall if interest is awarded on monies already received by him.[5]

We agree with Wheeling-Pittsburgh and note our observation in *C & E Trucking Corp. v. Luisser*, 8 Pa. Commonwealth Ct. 72, 75-76, 301 A.2d. 127, 128 (1973) that "[t]he assessment of interest on compensation is intended to be a penalty for failure to make prompt payment and to compensate the claimant for the loss of use of the money during the period of the delay in the payment thereof." Chovan has not been the victim of a failure to make prompt payment, nor has he suffered the loss of use of benefits during a period of delay. From September 23, 1973 until September 21, 1974, Chovan received $100 per week under an agreement with Wheeling-Pittsburgh which specifically contemplated the possibility of a claim under the Act. The terms of that agreement acknowledge the subrogation right of the sickness and accident insurer and give credence to Wheeling-Pittsburgh's position that the payments were in lieu of compensation.

The only troublesome point is the referee's undisturbed finding that Chovan's benefits under the sickness and accident plan ended on September 21, 1974. The record is unclear regarding whether Chovan actually began receiving benefits under the Act on that date, or, indeed, whether he has ever received benefits under the Act. Since the question of Chovan's disability was finally resolved by the Board's order of

---

[5] The benefits paid under the sickness and accident policy were $100 per week—a figure identical to the benefits awarded by the Board under the Act.

September 11, 1975, there is a period of approximately one year (from September 21, 1974 to September 11, 1975) for which Chovan would be entitled to interest under Section 406.1. Because the Board's award of interest on the "amount due and owing to the claimant" leaves us with no way of determining the precise scope of the award, and in light of the entire foregoing opinion, we must remand.

### ORDER

AND Now, this 12th day of May, 1977, it is hereby ordered that the record in the above-captioned matter be remanded to the Workmen's Compensation Board of Appeals for such further proceedings as are necessary for the making of any necessary findings of fact, and for clarification of the award of interest and disposition of the award of attorney's fees in accordance with the above opinion.

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent because I do not believe that the workmen's compensation claimant here is entitled to an award of attorney's fees against the General American Insurance Company.

Section 319 of The Pennsylvania Workmen's Compensation Act[1] (Act), 77 P.S. §671, provides:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

General American paid sickness and accident benefits to the claimant and, therefore, this case is clearly one which falls under the second paragraph of Section 319 of the Act, and this paragraph does not provide for an award of attorney's fees. Moreover, the equitable principles enunciated in *Workmen's Compensation Appeal Board v. Del Vecchio*, 23 Pa. Commonwealth Ct. 244, 351 A.2d 691 (1976) do not apply here

because the *Del Vecchio* case involved the first paragraph of Section 319 of the Act, which specifically provides that the employer pay a pro rata share of the claimant's attorney's fees.

Because I believe that there is neither a statutory nor an equitable basis for awarding attorney's fees against General American in this case, I would reverse the order of the Board insofar as it awarded attorney's fees against General American to the claimant.

Judge WILKINSON, JR. joins in this dissent.