**Robert TILLER, Odis McAdams, Thomas Hunter, and Raymond Albert, Appellants,**

v.

**CITY OF PHILADELPHIA BOARD OF PENSIONS AND RETIREMENT.**

Commonwealth Court of Pennsylvania.

Argued June 13, 2002.

Decided Aug. 12, 2002.

Reargument Denied Oct. 7, 2002.

W. Michael Mulvey, Philadelphia, for appellants.

Michael J. Burns, Philadelphia, for appellee.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge FRIEDMAN.

Robert Tiller, Odis McAdams, Thomas Hunter, and Raymond Albert (collectively, Appellants) appeal from a September 15, 2000, order of the Court of Common Pleas of Philadelphia County (trial court) affirming a decision of the City of Philadelphia Board of Pensions and Retirement (Pension Board). The dispute concerns whether the amount of the workers' compensation benefits offset against Appellants' service-connected disability retirement pensions (Pensions) should be reduced by the amount of the attorney's fees that Appellants paid to secure the workers' compensation benefits.

Appellants all are former police or correctional officers employed by the City of Philadelphia (City) who were injured in the course of their service to the City. Each Appellant hired an attorney to secure workers' compensation benefits from the City, and each was awarded such benefits, a percentage of which went to pay attorney's fees. Subsequently, the Pension Board awarded each Appellant a Pension, with Pension rights determined by the provisions of the Municipal Retirement System Ordinance (RSO), approved December 3, 1956, *as amended.*[1] (*See* Pension Board's Findings of Fact, Nos. 1–5, 17–21; Pension Board's Conclusions of Law, No. 1.) Pursuant to section 206.3(a)

---

1. The RSO has been recodified in the Philadelphia Public Employees Retirement Code at Title 22 of The Philadelphia Code (Code). However, because Appellants all retired prior to the effective date of the recodification, the RSO applies.

of the RSO,[2] the Pension Board reduced the amount of each Appellant's Pension by the amount of workers' compensation that each Appellant had been awarded, including that portion of the workers' compensation award paid to Appellants' attorney as a contingency fee. (*See* Pension Board's Findings of Fact, Nos. 6–7; Pension Board's Conclusions of Law, Nos. 2–4.)

Appellants' counsel contacted the Pension Board, questioning the Pension Board's policy of including the attorney's fee portion of Appellants' workers' compensation awards in those awards for purposes of reducing Pensions pursuant to section 206.3(a) of the RSO. (Pension Board's Findings of Fact, No. 8.) Following a public hearing on the matter, the Pension Board voted to deny Appellants' request to adjust the offset, concluding that there was no legal basis for the Pension Board to exclude attorney's fees from Appellants' workers' compensation awards when reducing Appellants' Pensions by the amount of those awards.[3] (*See* Pension Board's Findings of Fact, Nos. 14, 42; Pension Board's Conclusions of Law, No. 13.) Appellants then appealed to the trial court, which affirmed the Pension Board's determination that Appellants' Pensions were subject to an offset of the entire amount of workers' compensation benefits, including attorney's fees paid. For the following reasons, we also affirm.[4]

Appellants' Pension rights in this case are determined by section 206.3(a) of the RSO (emphasis added), which provides:

> Upon retirement for service-connected disability, a member shall receive … an annual retirement benefit equal to seventy percent (70%) of his final compensation … provided that:
>
> (a) *Should the employee receive* or be entitled to receive for and during his period of disability *from the Treasury of the City, Workmen's Compensation Benefits* or payments in the nature of Workmen's Compensation Benefits from any source, such *disability retirement benefits shall be reduced by the amount and for the period such other compensation are [sic] paid or payable* even though all or part of the amount so payable may be wholly or partially commuted. …

(Pension Board's Conclusions of Law, No. 2; R.R. at 16a.) (Emphasis added.)

In considering this clear and unambiguous language, we must agree with the Pension Board, as affirmed by the trial court, that the RSO contains no provision that permits the Pension Board "to subtract a private contingent fee agreement from the amount of [A]ppellants' workers' compensation award[s] for purposes of reducing [A]ppellants' service connected dis-

---

**2.** Recodified at section 22–401(4)(a) of the Code.

**3.** Apparently, the Pension Board had examined this question previously and sought the advice of the City Law Department. In response, the then Assistant City Solicitor issued a memorandum advising that the RSO requires the Pension Board to reduce Pensions by the full amount of workers' compensation benefits, including that portion of the award designated as attorney's fees. (*See* opinion letter of December 8, 1993, R.R. at 32a–35a.) In its decision here, the Pension Board notes that section 8–410 of the Phila-

delphia Home Rule Charter requires the Pension Board to follow the City Law Department's legal advice. (*See* Pension Board's Findings of Fact, No. 15; Pension Board's op. at 4, n.2; R.R. at 9a.)

**4.** This court's scope of review, where the trial court takes no additional evidence, is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact were supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b).

ability [P]ensions pursuant to the requirements of the RSO." (*See* Pension Board's Conclusions of Law, No. 3.) To the contrary, the RSO mandates reduction of a member employee's Pension by the amount of workers' compensation paid, and, as the Pension Board noted, the amount of Appellants' respective workers' compensation awards paid does not vary merely because Appellants each chose to enter a private contingent fee agreement designating a percentage of those awards as an attorney's fee. (*See* Pension Board's Conclusions of Law, Nos. 3–4.)

Attorney's fees, as part of a compensation award, are discussed in two sections of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626. Relevant here is section 440 of the Act, which provides:

> [i]n any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, *the employe* or his dependent, as the case may be, *in whose favor the matter at issue has been finally determined* in whole or in part *shall be awarded*, **in addition to the award for compensation,** *a reasonable sum for* costs incurred for *attorney's fee*, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. § 996(a). (Emphases added.) Accordingly, a WCJ may, *in addition to the award for compensation*, make an award for certain other costs, including attorney's fees, if the WCJ determines that the employer did not have a reasonable basis for contesting liability.[5] Such an award is separate, distinct, and above the original award for compensation. However, none of the attorney's fees at issue here involve an award for unreasonable contest of the workers' compensation claim.[6] (Pension Board's Findings of Fact, No. 23.) Rather, Appellants were issued awards compensating them for their injuries, and Appellants' Pensions were, in fact, reduced only by the amount of these compensatory awards. (Pension Board's Conclusions of Law, Nos. 6–7.) Under the RSO, the percentage of the award attributable to the payment of attorney's fees is not to be

---

**5.** When an employer demonstrates a reasonable contest to any petition, the employee bears the burden of paying his or her attorney's fees out of the payment of compensation. Typically such fees are paid on a percentage basis out of each periodic installment of wage-loss compensation, *see* section 501 of the Act, 77 P.S. § 1021, with the employer or insurance company writing two checks at the time of each payment, generally one for 80% to the employee and another for 20% to the attorney.

**6.** Attorney's fees are also discussed in section 442 of the Act, which provides that:
> [a]ll counsel fees, agreed upon by claimant and his [or her] attorneys, for services performed in matters before any workers' compensation judge or the board, *whether or not allowed as part of a judgment,* shall be approved by the workers' compensation judge or board as the case may be....

77 P.S. § 998. (Emphasis added.) This section of the Act requires the WCJ to approve any agreement for attorney's fees between a claimant and his or her counsel, regardless of whether those attorney's fees are included in, or are separate from, the compensation award. Thus, where, as in the present case, attorney's fees are not part of a separate judgment or award, Appellants may choose to use part of their total award to pay for the services of an attorney, but the WCJ must approve the arrangement.

excluded from the reduction of Appellants' Pensions.

Appellants' counsel disagrees, arguing that, according to the language of the RSO, Pension benefits should be reduced by the amount of workers' compensation that Appellants *received*, and the word "received" is controlling on the issue. However, such an interpretation of the RSO is unwarranted. In fact, contrary to Appellants' contention, the relevant section of the RSO does not state that Pensions are to be reduced by the amount of workers' compensation *received;* rather, the RSO provides that, if a member employee receives any workers' compensation, that member employee's Pension is to be reduced by the amount of workers' compensation *paid* or payable. As stated, nothing in the RSO directs the Pension Board to reduce the Pension only by that portion of the workers' compensation payment which a member employee actually nets, nor does the RSO permit the Pension Board to ignore that percentage of the workers' compensation award forwarded directly to counsel on the employee's behalf. Thus, the Pension Board properly concluded that it was obligated under the RSO to reduce Appellants' Pensions by the *entire* amount paid out to cover their respective workers' compensation awards, including that portion attributable to attorney's fees. (*See* Pension Board's Conclusions of Law, No. 4.)

In arguing their contrary position, Appellants rely on this court's decision in *LTV Steel Company v. Workmen's Compensation Appeal Board (Morrow)*, 690 A.2d 1316 (Pa.Cmwlth.), *appeal granted*, 548 Pa. 675, 698 A.2d 597 (August 20, 1997), *appeal discontinued*, October 31, 1997. In that case, we decided whether an employer had to pay a claimant's attorney's fees out of workers' compensation benefits that the claimant was obligated to reimburse to the employer's pension plan. We held that where, as a result of a claimant's success in prosecuting a workers' compensation claim, the employer's pension plan receives a pecuniary benefit in the form of a reimbursement that it otherwise would not have received, the claimant's counsel is entitled to fees deducted from the amount to be repaid to the pension plan. However, *LTV Steel* neither applies to Appellants' matter nor supports Appellants' position.

Appellants point out that, under *LTV Steel*, the question of whether attorney's fees should be deducted from the amount of workers' compensation that a claimant is required to reimburse to the employer's disability or pension plan hinges upon whether the entity asserting the offset, in this case, the Pension Board, realizes a pecuniary benefit as a result of the claimant's successful workers' compensation litigation. *See LTV Steel.* Appellants maintain that the Pension Fund here clearly received a pecuniary benefit as a result of Appellants' successful workers' compensation claim because, in reducing Pensions by an amount in excess of that actually received by Appellants as workers' compensation benefits, the Pension Board is allowed to pay Appellants less from the Pension Fund than Appellants' entitlement under the RSO, that is, less than seventy percent of Appellants' respective salaries.[7] In light of this evident pecuniary benefit, Appellants apply the rationale of *LTV Steel* and assert that the attorney's fees

---

7. Under the RSO, a person who receives a Pension is entitled to annual benefits equal to seventy percent of his final compensation. However, Appellants appear to ignore that Pension recipients are not guaranteed to receive this percentage in benefits; rather, the Pension amount is to be reduced by the amount of any workers' compensation benefits paid or payable during the period of disability. *See* section 206.3(a) of the RSO.

they paid should not be included in the calculation of the workers' compensation award offset taken by the Pension Board. We disagree with this reasoning.

As pointed out by the Pension Board and the trial court, *LTV Steel* can be distinguished from the present case in two important respects. First, *LTV Steel*'s applicability is questionable because the provisions of the RSO relevant in the present matter were never considered in that case.[8] Indeed, the pension plan considered in *LTV Steel* specifically provided for the payment of attorney's fees incurred in the obtaining of the workers' compensation award,[9] whereas, as we noted previously, the RSO makes no provision for payment of attorney's fees incurred in obtaining other compensation for the member employee.

Second, the employer in *LTV Steel* was not self-insured for workers' compensation purposes; instead, the workers' compensation benefits received by the claimant in that case were paid by a third entity, an insurance company. Therefore, although responsible for payments under its pension plan, the employer in *LTV Steel* had no right to reimbursement absent the claimant's workers' compensation award. In other words, by virtue of the claimant's successful workers' compensation claim, the employer's pension fund received a bonus in the form of recovery for funds paid by a third party. Because the pension fund received a pecuniary benefit to which it was not otherwise entitled, we held that attorney's fees were properly deducted from the amount of reimbursement. *LTV Steel.*

By contrast, the Pension Board here receives no pecuniary benefit from Appellants' workers' compensation litigation. Unlike the employer in *LTV Steel,* the City is self-insured and, thus, paid Appellants' workers' compensation benefits. In addition, as the Pension Board and trial court correctly concluded, the City and the Pension Board actually are the same entity; that is, the Pension Board is the City agency that administers the Pension Fund pursuant to section 8–407 of the Home Rule Charter,[10] while the City remains responsible for guaranteeing the Pension Fund and for satisfying the Pensions payable from the Pension Fund. RSO,

8. Thus, according to the Pension Board, this matter is governed, not by *LTV Steel*, but by *William Nolan v. Board of Pensions and Retirement of the City of Philadelphia*, 35 Phila. 513, 1998 WL 1297095 (1998), which interprets the relevant section of the RSO. In that case, the court of common pleas upheld the Pension Board's determination that a claimant's Pension was properly offset by his lump-sum workers' compensation award. The Pension Board contends that, because the opinion did not separate attorney's fees and net payment to the claimant, it can be inferred that the court did not intend the claimant's Pension to be reduced only by the amount he personally received, without the attorney's fees. This court affirmed *Nolan* in a memorandum opinion.

9. The pension agreement in LTV Steel provided as follows: "any such deduction [from the amount of pension monies owing because of the receipt of workers' compensation] shall be adjusted to take into account expenses such as reasonable lawyer's fees, and medical expenses incurred by the participant in processing claim for such payment...." *LTV Steel*, 690 A.2d at 1318 n. 2. (Emphasis omitted.)

10. Pursuant to Regulation No. 1, "the [Pension Board] is empowered by Section 8–407 of the Home Rule Charter and Section 111.1 of the [RSO] to make all necessary regulations to carry into effect the provisions of the [RSO]." (Pension Board's brief at 10, quoting Regulation No. 1.) Thus, the authority for the Pension Board is through the City's Home Rule Charter, and the Pension Board exists only as a creation of the City, which gives the Pension Board certain responsibilities to administer the Pension Fund.

§ 116.1.[11] (*See* Pension Board's Conclusions of Law, No. 8.) Thus, even if *LTV Steel* applies to cases decided under the RSO, the rationale behind *LTV Steel* cannot support Appellants' argument because the City, i.e., the Pension Fund, received no pecuniary benefit from a third party payment. (*See* Pension Board's Conclusions of Law, Nos. 9–11.)

Because the clear language of the RSO mandates reduction of Pensions by the entire amount of a City paid workers' compensation award, and because the City is the source of funding both for Appellants' Pensions and for their workers' compensation benefits,[12] reduction of the offset amount by attorney's fees is unjustified.

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of August, 2002, the order of the Court of Common Pleas of Philadelphia County, dated September 15, 2000, is hereby affirmed.

Senior Judge MIRARCHI, Jr. dissents.

---

11. Recodified at section 22–1003 of the Code, this section provides:

The obligations of the Retirement System and all plans therein, including benefits payable to current and future retired members and their beneficiaries and survivors, are hereby declared to be obligations of the City of Philadelphia.

12. In this regard, Appellants assert that there is no evidence to support the findings of the Pension Board and the trial court that the Pension Board and the City are the same legal entity or that the Pension Fund is fully funded by the City. To the contrary, Appellants contend that the money to pay the Pensions and the money to pay the workers' compensation comes from two different sources, the Pension Fund and the City treasury, respectively. Moreover, Appellants assert that the Pension Fund is a separate trust fund of money that is not commingled with City revenues and is not the City's money. Instead, it is comprised of contributions from several sources, including a six-percent deduction from the paycheck of every City employee. Other sources include the Commonwealth of Pennsylvania, the City and annual returns on investments of the Pension Fund money. However, in spite of Appellants' claims about the varying sources of Pension Fund money and its status as a City trust, the Pension Fund still forms part of the City treasury that is depleted when Pensions are paid.