**CITY OF PHILADELPHIA, BOARD OF PENSIONS AND RETIREMENT**

v.

**Herbert CLAYTON, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2009.

Decided Dec. 24, 2009.

W. Michael Mulvey, Philadelphia, for appellant.

Elise Bruhl, Philadelphia, for appellee.

BEFORE: SIMPSON, Judge, and BUTLER, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Herbert Clayton (Appellant) asks whether the Court of Common Pleas of Philadelphia County (trial court) erred in entering judgment in favor of the City of Philadelphia's (City) Board of Pensions and Retirement (Pension Board) in the amount of $298,922.04 and accruing interest. Appellant received both service-connected disability pension (disability pension benefits) and workers' compensation benefits for the period of January, 1998 to September, 2004 for a career-ending injury he suffered in 1997. However, it is clear a claimant is not entitled to retain both disability pension and workers' compensation benefits for the same period of disability. Thus, this dispute concerns whether Appellant must reimburse the City for disability pension benefits he received for the same period of time he also received workers' compensation benefits.

In May, 1997, Appellant worked as a police officer for the City when he suffered a permanent work injury. Appellant worked as a police officer for the City for 25 years. As such, Appellant qualified to receive service retirement benefits. He began receipt of those benefits in January, 1998.

On December 9, 1998, Appellant applied for disability pension benefits from the Pension Board. That same day, Appellant entered into a Pension Agreement with the Pension Board, which provided the City's entitlement to pursue a credit if Appellant received both disability pension and workers' compensation benefits.

In September, 2000, the Pension Board approved Appellant's disability pension benefits application. Thereafter, the Pension Board paid Appellant disability pension benefits. The Pension Board retroactively converted the service retirement benefits he had been receiving since 1998 into disability pension benefits.

Appellant subsequently filed a claim under the Workers' Compensation Act (Act).[1] In March, 2001, a Workers' Compensation Judge (WCJ) awarded Appellant workers' compensation benefits, effective January, 1998. No appeal was taken from that award. However, the City failed to pay Appellant workers' compensation benefits.

Seven months later, in October, 2001, Appellant filed a petition to reinstate benefits and a penalty petition with the Bureau of Workers' Compensation (Bureau), alleging the City failed to pay workers' compensation benefits in compliance with the WCJ's order. In June, 2004, a second WCJ ordered the City to pay Appellant all past due workers' compensation benefits without offset or credit because the City failed to either file a notice of offset[2] or request credit in the earlier WCJ proceedings.[3]

Subsequently, the City filed with the Bureau two notices of benefit offset. One sought credit for disability pension benefits beginning in August, 2004 against Appellant's future workers' compensation benefits. The other sought a retroactive credit for disability pension benefits to offset Appellant's workers' compensation award for the period of January, 1998 to September, 2004.

The City also appealed the second WCJ's order to the Workers' Compensation Appeal Board (WCAB) and requested a supersedeas as to the payment of ongoing workers' compensation benefits. In August, 2004, the WCAB denied the supersedeas request and, in June, 2005, denied the City's appeal. Nevertheless, the City refused to pay Appellant the retroactive workers' compensation benefits.[4]

Because the City failed to pay the second WCJ's award within 30 days and the WCAB denied the City's request for supersedeas, Appellant filed a praecipe to enter judgment and a praecipe for writ of execution against the City in the trial court in the amount of $307,136.84.[5] The City filed petitions to open judgment and set aside the writ of execution. In April, 2005, another judge of the same court denied both of the City's petitions finding no legal or equitable basis to open the judgment or set aside the writ of execution.

In November, 2005, Appellant filed a second praecipe to enter judgment and a second praecipe for writ of execution. That same day, the City filed an emergency petition to open judgment. Relying on the April, 2005 order, the trial court dismissed the City's emergency petition to

---

**1.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

**2.** In order for an employer or insurer to obtain an offset of workers' compensation benefits a claimant receives with an amount of pension benefits he also obtained, the employer must file a notice of benefit offset with the Department of Labor and Industry. 34 Pa. Code § 123.4.

**3.** In September, 2004, the City began paying Appellant prospective workers' compensation benefits from that date onward. The Pension Board is now only paying Appellant $8.50 a month, which includes his union dues and Police Benevolent Association membership. Supplemental Reproduced Record (S.R.R.) at 179b.

**4.** In March, 2006, this Court affirmed the WCAB's decision denying the City a credit against its workers' compensation obligation for its failure to abide by the second WCJ's award and failure to pursue the statutory remedies available to it. *City of Phila. v. Workers' Comp. Appeal Bd. (Clayton)*, (Pa. Cmwlth., No. 1407 C.D.2005, filed March 28, 2006).

**5.** This sum consisted of temporary workers' compensation benefits from January, 1998 to January, 2005 at $561 per week ($204,765), accrued interest ($100,231.70), litigation expenses ($183.64), attorney fees ($1,880), and filing costs ($76.50).

open judgment. The City appealed all three orders to this Court.

In October, 2006, this Court affirmed the trial court, noting the City's petitions to open judgment or set aside the writs of execution were collateral attacks on the second WCJ's award of compensation.[6]

Subsequently, the City paid Appellant $343,540.61 to satisfy the workers' compensation award. Thus, after payment of the workers' compensation award, Appellant possessed both workers' compensation and disability pension benefits for the same period of disability. As a result, in May, 2007, the Pension Board sent Appellant a letter seeking total reimbursement of the disability pension benefits he received in addition to the workers' compensation benefits. Appellant, however, refused to reimburse the Pension Board.

The Pension Board filed a breach of contract and unjust enrichment action. The Pension Board argued it was entitled to recover the disability pension benefits it paid Appellant from January, 1998 to September, 2004 in the form of a dollar-for-dollar credit for the workers' compensation benefits paid to Appellant for the same period of disability. The trial court held a bench trial and, in September, 2008, entered judgment in favor of the Pension Board in the amount of $298,922.04 with a further assessment of $77/day from January 20, 2007 until the date of payment. This is the order currently on appeal.

Appellant filed a motion for a new trial and for judgment notwithstanding verdict (JNOV). The trial court denied Appellant's motions, concluding the 1998 Pension Agreement and the Philadelphia Code[7]

precluded Appellant's simultaneous retention of the disability pension and workers' compensation benefits. This appeal followed.[8]

Appellant contends the Pension Board assigned its right to recover the disability pension benefits to the City. Appellant therefore submits the Pension Board lacked standing to pursue the instant breach of contract action. Appellant also contends that if the Pension Board and the City are the same entity, the Pension Board's breach of contract action is barred because the City's right to recovery has been previously litigated. Thus, under the doctrines of *res judicata* or collateral estoppel, re-litigation is precluded. In addition, Appellant asserts the Pension Board's expert witness erred when calculating damages.

At the outset, we note there is no dispute as to whether Appellant received both disability pension and workers' compensation benefits for the same period of disability. Indeed, throughout the record Appellant admits he received the disability pension benefits in addition to the workers' compensation benefits, he understood he was not entitled to retain both, and he has not attempted to reimburse the Pension Board.

The Pension Agreement in relevant part provides:

[This] Agreement [is] entered into ... between *[Appellant]* ... and the *[Pension Board]*. ...

. . . .

WHEREAS, under [the Philadelphia Code], under which [Appellant is] enti-

6. *See Clayton v. City of Phila.*, 910 A.2d 93 (Pa.Cmwlth.2006).

7. Philadelphia Code §§ 22–101—1305.

8. Our review of an order denying JNOV is whether, reading the record in the light most

favorable to the verdict winner and granting the benefit of every favorable inference, there is sufficient competent evidence to support the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 523 Pa. 1, 564 A.2d 1244 (1989).

tled to retire ... it is provided that *the [Pension] Board shall deduct from such retirement ... benefits the amount of any Workmen's Compensation benefits which [Appellant] may receive or to which [he] may become entitled....*

....

2. In the event any Workmen's Compensation benefits ... should be awarded to [Appellant] then the benefits previously paid to [Appellant] or applied on his behalf under [the Philadelphia Code] aforesaid shall be considered and determined to be payments of Workmen's Compensation.... [The City] shall be entitled to credits for such payments against any award of such Workmen's Compensation benefits for the period during which such retirement benefits have been paid or applied to the extent of Workmen's Compensation payments payable to [Appellant] but not in excess of the benefits actually paid....

3. Thereafter there shall be deducted from such retirement ... benefits payable to [Appellant] the amount of Workmen's Compensation benefits paid or payable to [Appellant]....

Original Record (O.R.), Ex. A; Reproduced Record (R.R.) at 10a (emphasis added).

The Pension Board and Appellant entered into the Pension Agreement. The Pension Agreement clearly provides if a claimant receives workers' compensation benefits while receiving disability pension benefits the disability pension benefits previously paid shall be considered workers' compensation benefits and the City is entitled to a credit.

In addition, Philadelphia Code § 22–401(4)(a) (relating to disability pension benefit offsets) in relevant part provides:

(a) If the member receives or is entitled to receive, for and during a period of disability, compensation from the City Treasury of the City, workers' compensation benefits or payments in the nature of workers' compensation benefits from any source, such disability retirement benefits shall be reduced by the amount of such compensation, benefits or payments for the period such compensation, benefits or payments are paid or payable even though all or part of the amount so payable may be wholly or partially commuted....

Philadelphia Code § 22–401(4)(a). Thus, the Philadelphia Code and the Pension Agreement state that a claimant cannot retain both pension disability and workers' compensation benefits for the same period of disability.

Turning to this appeal, Appellant argues the trial court erred in determining the Pension Board has standing to recover the disability pension benefits. Appellant first contends the Pension Board and the City are distinct entities. Furthermore, Appellant submits the Pension Board assigned its right to recovery to the City. Appellant thus argues the Pension Board lacked standing to sue under the Pension Agreement.

■ We are not persuaded the Pension Board lacked standing to bring the instant breach of contract action. In determining whether a party has standing, a court is only concerned with the question of who is entitled to make a legal challenge and not the merits of that challenge. *In re T.J.*, 559 Pa. 118, 739 A.2d 478 (1999). Furthermore, a statute or an interest deserving of legal protection may confer standing. *Pa. Game Comm'n v. Dep't of Envtl. Res.*, 521 Pa. 121, 555 A.2d 812 (1989). Accordingly, we must determine if the Pension Board has an interest deserving legal protection or whether an applicable statute confers standing.

■ First, Philadelphia Code § 22–1204 (relating to the Pension Board's right to

recover excess disability pension benefits) in relevant part provides:

> Should any member, survivor or beneficiary receive a benefit from the Retirement System more or less than such person is entitled to receive, the [Pension] Board, on the discovery of any such error, regardless of the intentional or unintentional nature of the error, shall correct such error and, so far as practicable, shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which the person was entitled shall be paid. *The [Pension] Board shall also be authorized to recover any excess payment including the right to make deductions from future benefits.*

Philadelphia Code § 22–1204 (emphasis added). This provision is sufficient to support standing.

Second, Philadelphia Code Section 22–1003 provides, "[t]he obligations of the Retirement System and all plans therein, including benefits payable to current and future retired members and their beneficiaries and survivors, are hereby declared to be obligations of [the City]." Philadelphia Code § 22–1003. Thus, the City and the Pension Board are the same entity for pension purposes.

Third, as explained in *Tiller v. City of Philadelphia Board of Pensions & Retirement*, 806 A.2d 477 (Pa.Cmwlth.2002), the City is the funding source for both workers' compensation and disability pension benefits. *Tiller* states:

> [T]he City and the Pension Board actually are the same entity; that is, the Pension Board is the City agency that administers the Pension Fund pursuant to ... the Home Rule Charter,[FN10] while the City remains responsible for guaranteeing the Pension Fund and for satisfy-

ing the Pensions payable from the Pension Fund.

> FN 10. ... Thus, the authority for the Pension Board is through the City's Home Rule Charter, and the Pension Board exists only as a creation of the City, which gives the Pension Board certain responsibilities to administer the Pension Fund.

*Id.* at 481. In sum, the Pension Board unequivocally has standing to recover the excess disability benefits because (1) the City and the Pension Board are the same entity and (2), Section 22–1204, above, confers standing on the Pension Board by ordinance.

Alternatively, Appellant argues the trial court erred because the doctrines of *res judicata* or collateral estoppel preclude the Pension Board's contract action. In particular, Appellant contends if the Pension Board and the City are the same entity then the Pension Board is subject to the same defenses as the City. Appellant argues the City's right to recover an overpayment of workers' compensation benefits has been previously litigated and, therefore, re-litigation of the matter is precluded under the doctrine of *res judicata* or collateral estoppel.

 We are also not persuaded the doctrine of *res judicata* or collateral estoppel precludes the Pension Board's contract action. *Res judicata* bars proceedings when the subject matter and the ultimate issues would be *identical* to those decided in earlier proceedings. *Kurtz v. Workmen's Comp. Appeal Bd. (Allied Chemical Corp.)*, 95 Pa.Cmwlth. 110, 504 A.2d 428 (1986). Similarly, the doctrine of collateral estoppel provides:

> [T]he determination of a fact in a prior action is deemed conclusive between the parties in a subsequent action even though the cause of action is different, where the fact was actually litigated in the prior action, was essential to that

judgment, and was determined by a valid and final judgment. *Christopher v. Council of Plymouth Twp.*, 160 Pa.Cmwlth. 670, 635 A.2d 749, 752 (1993).

■ In the earlier proceedings, Appellant's claim involved a workers' compensation claim and not a common law cause of action. Pursuant to *Christopher*, "[a] worker's compensation claim and a common law cause of action are not identical...." *Id.* Thus, *res judicata* does not bar the instant action. *Kurtz.*

■ In addition, in the earlier proceedings, the City had not yet paid Appellant workers' compensation benefits. As such, the workers' compensation proceeding concerned whether the second WCJ should credit the City for the disability pension benefits already paid against the unpaid workers' compensation obligation. This Court held, however, the City's failure to follow the Act's offset procedures constituted a violation of the Act. We therefore affirmed the second WCJ's 2004 order requiring the City to pay Appellant workers' compensation benefits thereby denying the credit.[9]

Currently, the City has paid Appellant workers' compensation and disability pension benefits. Thus, the City is not arguing a WCJ should permit a credit. Rather, the instant case involves a wholly different issue: whether Appellant breached the Pension Agreement when he refused to reimburse the City in contravention of the Pension Agreement and Philadelphia Code § 22–401(4)(a), above. This Court has not previously reviewed whether Appellant impermissibly retained both the disability pension and workers' compensation benefits; thus, collateral estoppel does not apply. *Christopher.*

In his final assertion of error, Appellant argues substantial evidence does not support the trial court's damage award because the Pension Board's expert witness's calculations are erroneous. In particular, Appellant contends the expert witness's testimony provides no basis as to why interest should be assessed from January, 1998, when Appellant did not receive the pension disability benefits until September, 2000, and he did not receive the worker's compensation benefits until January, 2007. In addition, Appellant argues there is no basis for the expert witness's use of a nine percent interest rate of return. Essentially, Appellant argues the expert witness's testimony regarding the reimbursement is speculative. We disagree.

■ It is beyond argument that the fact finder is free to accept or reject the credibility of expert witnesses, and to believe all, part or none of the evidence. *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 249, 555 A.2d 873, 876 (1989). As long as sufficient evidence exists in the record which is adequate to support the trial court's determinations, as fact-finder, an appellate court is precluded from overturning those determinations and must affirm. *Id.*

■ Furthermore, "damages are considered speculative only if there is uncertainty concerning the existence of damages rather than the ability to precisely calculate the amount or value of damages." *Pa. State Univ./PMA Ins. Group v. Workers' Comp. Appeal Bd. (Hensal)*, 911 A.2d 225, 233 (Pa.Cmwlth.2006), *appeal denied*, 593 Pa. 743, 929 A.2d 1163 (2007). "The 'law does not require that proof in support of claims for damages or in support of compensation must conform to the stan-

---

**9.** *See City of Phila. v. Workers' Comp. Appeal Bd. (Clayton)*, (Pa.Cmwlth., No. 1407 C.D. 2005, filed March 28, 2006).

dard of mathematical exactness.' All that the law requires is that '(a) claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough.' " *Kaczkowski v. Bolubasz*, 491 Pa. 561, 567, 421 A.2d 1027, 1030 (1980) (citations omitted).

Here, the Pension Board hired an actuary to calculate the amount of overpayment of workers' compensation benefits and the extent of Appellant's reimbursement. Supplemental Reproduced Record (S.R.R.) at 29b–39b. The trial court found the expert witness's testimony credible, and Appellant did not provide opposing expert testimony challenging the Pension Board's expert witness's calculations.

The expert witness's calculations encompassed the period from January, 1998 to January, 2007. S.R.R. at 97b.[10] Furthermore, the City's expert based his calculations on Appellant's receipt of $542.00 per week in workers' compensation benefits. S.R.R. at 55b. In addition, the expert witness testified the nine percent interest rate of return is based upon the Pension Fund's expected long-term rate of return. S.R.R. at 44b.[11] Finally, the expert witness determined the accumulated value of these payments totaled $298,922.04. S.R.R. 96b.

■ In explaining the accrued interest, the expert witness stated the accumulated value accounts for money that would have remained in the Pension Fund had the workers' compensation benefit offset occurred in January, 1998. S.R.R. at 44b–50b. "In other words, by virtue of [Appellant] receiving disability [pension] benefits

instead of Worker's Comp[ensation] . . . he had the money in his hand at those dates. . . ." S.R.R. at 67b. As such, the Pension Board could not invest the money at its expected long-term interest rate of return while the funds were in Appellant's possession. *Id.*

■ Furthermore, the expert witness testified the date of the retroactive awards makes no difference to the calculations provided in his report. S.R.R. 59b. Specifically, the expert witness explained Appellant started receiving service retirement benefits in March, 1998. In 2000, the Pension Board awarded Appellant disability pension benefits, which he received thereafter in lieu of the service retirement benefits. Furthermore, the Pension Board retroactively converted the service retirement benefits Appellant received since 1998 into disability pension benefits. Because Appellant has effectively received benefits since January, 1998, the record supports the trial court's determination the expert witness did not err in calculating Appellant's reimbursement of disability pension benefits and accruing interest.[12]

■ Finally, relying on *LTV Steel Co. v. Workmen's Compensation Appeal Board (Morrow)*, 690 A.2d 1316 (Pa. Cmwlth.1997), Appellant argues the expert witness erred when he calculated Appellant's weekly workers' compensation benefits at $542.00 because 15% of that sum constituted attorney's fees. Appellant contends the 15% should be deducted from the reimbursement. We disagree.

10. Although the sum of workers' compensation payments included payments from January, 1998 through September, 2004, the expert witness calculated the accumulated value through January, 2007 to account for the interest that would have accrued if the money had been in the Pension Fund and not in Appellant's possession.

11. The expert witness used a nine percent interest credit rate through June, 2005 and an eight point seven five percent interest credit rate thereafter.

12. Moreover, the lump sum workers' compensation awards Appellant received in January and February, 2007 included accumulated interest. R.R. 11a.

Whether an appellant can deduct attorney's fees from a pension plan reimbursement turns "on whether the [employer] to be reimbursed would receive a pecuniary benefit as a result of [an appellant's] successful litigation of a workers' compensation claim." *LTV Steel Co.*, 690 A.2d at 1320. The *LTV Steel Co.* Court determined an employer receives a pecuniary benefit when an appellant is successful on his workers' compensation claim and a separate entity pays for the workers' compensation award. Under such circumstances, the pension plan will receive a pecuniary benefit to which it was not otherwise entitled, in the form of a pension plan reimbursement. *Id.* In that instance, an appellant can deduct the attorney's fees from the reimbursement. *Id.* As a corollary, if an employer is self-insured and pays the workers' compensation award, then an appellant *cannot* deduct the attorney's fees from the disability pension reimbursement because the employer will not receive a pecuniary benefit from the reimbursement.

Here, the City is a self-insured employer for workers' compensation purposes. *Murphy v. Workers' Comp. Appeal Bd. (City of Phila.)*, 871 A.2d 312 (Pa.Cmwlth. 2005). Thus, the City paid Appellant's workers' compensation award. Furthermore, as discussed above, the City and the Pension Board are the same entity. *Tiller*. As such, the City will not receive a pecuniary benefit if Appellant reimburses the Pension Fund for the disability pension benefits. *LTV Steel Co.* Thus, Appellant cannot deduct attorney's fees from the amount to be repaid to the Pension Fund. *LTV Steel Co.* Accordingly, we conclude the expert witness did not err in calculating the reimbursement based on Appellant's total weekly workers' compensation benefits. The record supports that there is a reasonable basis for the expert witness's calculations. Thus, sufficient evidence exists in the record to support the trial court's judgment. *O'Connell.*

Accordingly, we affirm.

### ORDER

**AND NOW,** this 24th day of December, 2009, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED.**